UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| CASTRO V. DECASTRO,<br><br>  Petitioner,<br>  v.<br><br>ROBERT LEGRAND, et al.,<br><br>  Respondents. | Case No. 3:14-cv-00529-RCJ-WGC<br><br>ORDER |

This 28 U.S.C. § 2254 petition for writ of habeas corpus by Nevada state prisoner Castro V. DeCastro is before the court for final disposition on the merits (ECF No. 31). As discussed below, DeCastro's petition is denied.

I. **Procedural History and Background**

As this court set forth in its order denying respondents' motion to dismiss (ECF No. 36), on September 4, 2009, a jury convicted DeCastro of count 1: sexual assault of a minor under age 14; count 3: lewdness with a child under age 14; and count 4: attempted sexual assault of a minor under age 14 (exhibit 54).[1] The state district court sentenced him as follows: count 1 - life with the possibility of parole after 240 months; count 3 – life with the possibility of parole after 120 months, to run concurrently with count 1; and count 4 – 96 months with the possibility of parole after 38 months, to run consecutively to counts 1 and 3. Exh. 58. Judgment of conviction was entered on December 7, 2009. *Id.*

---

[1] Except where otherwise noted, the exhibits referenced in this order are exhibits to respondents' first motion to dismiss, ECF No. 11, and are found at ECF Nos. 12-17.

1

The Nevada Supreme Court affirmed DeCastro's convictions on February 24, 2012, and remittitur issued on March 20, 2012. Exhs. 100, 101.

DeCastro filed a counseled state postconviction petition for habeas corpus on August 22, 2012. Exhs. 104, 105. The state district court denied the petition on April 2, 2013. Exh. 118. On June 11, 2014, the Nevada Supreme Court affirmed the denial of the petition, and remittitur issued on July 8, 2014. Exh. 134.

On October 10, 2014, DeCastro dispatched his federal habeas petition for filing (ECF No. 4). Ultimately, this court appointed the Federal Public Defender as counsel for DeCastro, and DeCastro filed a counseled first-amended petition on January 29, 2016 (ECF No. 31). Respondents have answered the petition (ECF No. 43), and DeCastro replied (ECF No. 44).

## II. Antiterrorism and Effective Death Penalty Act (AEDPA) Legal Standard

The AEDPA provides the legal standards for this court's consideration of the petition in this case:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693-694 (2002). This Court's ability to grant a writ is limited to cases where "there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter*, 562 U.S. 86,

102 (2011). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer*, 538 U.S. at 73 (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell*, 535 U.S. at 694.

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer*, 538 U.S. at 74 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409).

To the extent that the state court's factual findings are challenged, the "unreasonable determination of fact" clause of § 2254(d)(2) controls on federal habeas review. *E.g., Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir.2004). This clause requires that the federal courts "must be particularly deferential" to state court factual determinations. *Id.* The governing standard is not satisfied by a showing merely that the

state court finding was "clearly erroneous." 393 F.3d at 973. Rather, AEDPA requires substantially more deference:

> .... [I]n concluding that a state-court finding is unsupported by substantial evidence in the state-court record, it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision. Rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.

*Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir.2004); *see also Lambert*, 393 F.3d at 972.

Under 28 U.S.C. § 2254(e)(1), state court factual findings are presumed to be correct unless rebutted by clear and convincing evidence. The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief. *Cullen*, 563 U.S. at 181.

### III.     Amended Petition

### Ground 1

DeCastro argues that his trial counsel was ineffective in violation of his Sixth and Fourteenth Amendment rights when counsel failed to adequately advise DeCastro of the terms of his plea and the dangers of non-acceptance of the State's plea offer (ECF No. 31, pp. 14-16). Ineffective assistance of counsel claims are governed by the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Supreme Court held that a petitioner claiming ineffective assistance of counsel has the burden of demonstrating that (1) the attorney made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment, and (2) that the deficient performance prejudiced the defense. *Williams v. Taylor*, 529 U.S. 362, 390-91 (2000) (citing *Strickland*, 466 U.S. at 687). To establish ineffectiveness, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *Id*. To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

4

proceeding would have been different. *Id.* A reasonable probability is "probability sufficient to undermine confidence in the outcome." *Id.* Additionally, any review of the attorney's performance must be "highly deferential" and must adopt counsel's perspective at the time of the challenged conduct, in order to avoid the distorting effects of hindsight. *Strickland*, 466 U.S. at 689. It is the petitioner's burden to overcome the presumption that counsel's actions might be considered sound trial strategy. *Id.*

Ineffective assistance of counsel under *Strickland* requires a showing of deficient performance of counsel resulting in prejudice, "with performance being measured against an objective standard of reasonableness, . . . under prevailing professional norms." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005) (internal quotations and citations omitted).

If the state court has already rejected an ineffective assistance claim, a federal habeas court may only grant relief if that decision was contrary to, or an unreasonable application of, the *Strickland* standard. *See Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.*

The United States Supreme Court has described federal review of a state supreme court's decision on a claim of ineffective assistance of counsel as "doubly deferential." *Cullen*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 129 S.Ct. 1411, 1413 (2009)). The Supreme Court emphasized that: "We take a 'highly deferential' look at counsel's performance . . . through the 'deferential lens of § 2254(d).'" *Id.* at 1403 (internal citations omitted). Moreover, federal habeas review of an ineffective assistance of counsel claim is limited to the record before the state court that adjudicated the claim on the merits. *Cullen*, 563 U.S. at 181-84. The United States Supreme Court has specifically reaffirmed the extensive deference owed to a state court's decision regarding claims of ineffective assistance of counsel:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards

5

created by *Strickland* and § 2254(d) are both "highly deferential," *id.* at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S. at ——, 129 S.Ct. at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S. at ——, 129 S.Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington*, 562 U.S. at 105. "A court considering a claim of ineffective assistance of counsel must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Id.* at 104 (quoting *Strickland*, 466 U.S. at 689). "The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Id.* (internal quotations and citations omitted).

Here, after a jury convicted him, DeCastro was sentenced to serve 20 years to life, a concurrent term of 10 years to life, and a term of 38 to 96 months, consecutive to the first two terms (ECF No. 31, pp. 14-16). He stated that his prior counsel, Mark Cichoski, negotiated a deal with the State wherein DeCastro would plead guilty to two counts of attempt lewdness, each carrying a sentence of 5 to 20 years, and the State reserved the right to argue for consecutive or concurrent sentences. He claims that counsel "failed to fully explain the mandatory sentencing" and that DeCastro "felt afraid, bullied, and did not understand the situation he was in." *Id.* at 16.

In affirming the denial of this claim in his state postconviction petition, the Nevada Supreme Court explained:

> Appellant claims that counsel attempted to coerce him into pleading guilty but also did not explain the consequences of going to trial and what the mandatory minimums would have been if he were convicted of all charges. Appellant fails to demonstrate that counsel was deficient. First, appellant did not plead guilty. Further, appellant does not explain what coercive tactics counsel used to attempt to coerce appellant into taking the plea agreement. Therefore, the district court did not err in denying this claim.

Exh. 61, pp. 3.

6

The record reflects the following. In November 2006, DeCastro was present at the waiver of the preliminary hearing, and his counsel told the justice of the peace that a deal was being negotiated for DeCastro to plead guilty to one count of lewdness with a minor under 14. Exh. 4. The court asked DeCastro if he understood the deal, and he responded "Yes, sir." Defense counsel then informed the court that DeCastro understood that the punishment was 10 to life. The court told DeCastro that it was DeCastro's decision whether to accept or reject the plea agreement when he appeared in state district court. *Id.*

The court minutes indicate that the matter was continued twice at the end of November because DeCastro, who is Filipino, wanted an interpreter. Exh. 8, pp. 2-5. Then in December, defense counsel advised the court that DeCastro wanted to withdraw from the plea negotiations; counsel also moved to withdraw. In May 2007, newly-appointed counsel Cichoski informed the court that the matter had been negotiated, but that DeCastro had questions about the deal, and Cichoski requested a continuance. In these federal habeas proceedings DeCastro has presented for the first time as exhibits a May 2007 email exchange between the prosecutor and Cichoski that indicates that the State offered two terms of 5-20 years, retaining the right to argue for consecutive or concurrent (exhibits 63, 64 to petitioner's first-amended petition).[2] Two days later, defense counsel informed the court that DeCastro had rejected the State's offer and wished to proceed to trial. *Id.* at 4-5.

DeCastro filed a pro se motion to dismiss counsel and appoint alternate counsel in state district court in October 2007. Exh. 23. He stated that counsel was repeatedly using "bully boy" tactics to force DeCastro into a plea agreement for two terms of 5 to 20 years. He stated that counsel told him that if he did not sign the plea agreement, he would spend the rest of his life in prison. DeCastro states that even though he was

---

[2] Inexplicably, the parties have filed separate, largely duplicative, sets of exhibits in this matter and have numbered them separately. Petitioner's exhibits are exhibits to his first-amended petition, ECF No. 31, and are found at ECF Nos. 32-34. They will be referred to as Pet. exh.

7

scared and confused he refused the plea agreement. He also alleged that counsel then stopped communicating with DeCastro when he refused to accept the plea agreement. He alleged that at a calendar call the "leader" of the public defenders approached him and used the same bullying tactics.

The State faxed a plea offer to DeCastro's next public defender, James Ruggeroli, on November 17, 2008. Pet. exh. 52, p. 33. That offer provided that DeCastro would enter an *Alford* plea to sexual assault with a minor under the age of 16 and attempted lewdness with a child under the age of fourteen and both parties would "stipulate to a prison term of twenty (20) years with eligibility for parole after five (5) years on each count." *Id.* at 35. The guilty plea agreement specifically stated that the consequences of a plea of guilty to sexual assault with a minor under the age of 16 was "life in the Nevada Department of Corrections with the possibility of parole with parole eligibility beginning at twenty (20) years or definite term of twenty (20) years with parole eligibility beginning at five (5) years." *Id.* at 36. DeCastro did not accept that deal. *See* exh. 46, p. 22. Respondents point out that that that written plea deal set out the mandatory minimums for sexual assault with a minor under the age of sixteen.

As trial was about to commence, the State indicated that the offer of 10 to life was available. Exh. 46, p. 22. The court asked defense counsel about the offer, and counsel stated: "the interpreter stated that [DeCastro] already turned down the lesser charge that was available."

Respondents point out that DeCastro has improperly presented the May 2007 email exchange between the prosecutor and defense counsel to this federal court when he never provided it in his state proceedings. Respondents are correct; however, the email exchange is merely cumulative of other exhibits that set forth the plea deal. In any event, DeCastro's claim in federal ground 1 is inconsistent. He acknowledges that his counsel urged him, even "bullied" him to take the plea deal, telling him that if he went to trial he would spend the rest of his life in prison. Yet he also now claims that he

8

was unaware of the full consequences of the plea deal and the potential mandatory minimums, and that if he had been aware of the full consequences, he would have taken the deal. This ground is belied by the record.

DeCastro has failed to demonstrate that the Nevada Supreme Court's decision on federal ground 1 is contrary to, or involves an unreasonable application of, *Strickland*, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). Accordingly, ground 1 is denied.

**Ground 2**

DeCastro asserts that insufficient evidence supported his conviction for attempted sexual assault with a minor under the age of 14 (ECF No. 31, pp. 16-18).

"The Constitution prohibits the criminal conviction of any person except upon proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 309 (1979) (citing *In re Winship*, 397 U.S. 358 (1970)). On federal habeas corpus review of a judgment of conviction pursuant to 28 U.S.C. § 2254, the petitioner "is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Id.* at 324. "[T]he standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n.16. On habeas review, this court must assume that the trier of fact resolved any evidentiary conflicts in favor of the prosecution and must defer to such resolution. *Id.* at 326. Generally, the credibility of witnesses is beyond the scope of a review of the sufficiency of the evidence. *Schlup v. Delo*, 513 U.S. 298, 330 (1995).

Nevada Revised Statute § 193.330(1) states "[a]n act done with the intent to commit a crime, and tending but failing to accomplish it, is an attempt to commit that crime." NRS § 200.366 states a sexual assault occurs when:

> [a] person subjects another person to sexual penetration, or who forces another person to make a sexual penetration on himself or herself .

9

. . against the will of the victim or under conditions in which the perpetrator knows or should know that the victim is mentally or physically incapable of resisting or understanding the nature of his or her conduct . . . .

The third amended information charged DeCastro with attempt sexual assault with a minor under the age of fourteen. Exh. 51, p. 3. In particular, the Information alleged:

> [DeCastro] did then and there willfully, unlawfully, and feloniously attempt [to] sexually assault and subject [MK] . . . to sexual penetration, to wit: fellatio, by [DeCastro] attempting to cause the said [MK] to lick his exposed penis, against her will, or under conditions in which [DeCastro] knew, or should have known, that said [MK] was mentally or physically incapable of resisting or understanding the nature of [DeCastro's] conduct.

*Id.*

At trial the victim testified to specific incidents; she said that during the first incident DeCastro pushed her down on the carpet in his home, "French" kissed her mouth, neck and breasts, and reached under her shirt to fondle her breasts while she tried to push him off her. Exh. 49, pp. 25-26. She stated that another time they were on the couch watching a movie and he grabbed her hand and made her touch his penis and masturbate him. Then he got on top of her and tried to pull her shorts down; when she said no and tried to pull them up, he got up and left the room. *Id.* at 29-31. The victim testified that DeCastro made her lie down on the tile floor, and he pulled her shorts down and began licking her vagina. *Id.* at 32. She stated that another time he chased her into the bathroom, forced her to the floor and began licking and fondling her breasts. *Id.* at 33. She testified that once when they were playing cards in the kitchen DeCastro pulled his penis out of his pants, wiggled it around and told her to touch it or lick it. When she said no, he said that he had only been joking and put it back in his pants. Then she left. *Id.* at 34

DeCastro argues that the victim's testimony about the kitchen incident was insufficient to support the conviction for attempted sexual assault (ECF No. 31, pp. 16-18). Affirming DeCastro's convictions, the Nevada Supreme Court discussed this claim at some length:

10

> Sufficiency of the evidence requires determining "whether the jury, acting reasonably, could have been convinced beyond a reasonable doubt of the defendant's guilt by the competent evidence," *Estes v. Park*, 122 Nev. 1123, 1144; 146 P.3d 1114, 1128 (2006). Evidence is viewed "in the light most favorable to the prosecution," with the question being "whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* It is the province of the jury to determine the weight and credibility of conflicting evidence. *Id.*
>
> "[T]o prove attempted sexual assault, the prosecution must establish that (1) appellant intended to commit sexual assault; (2) appellant performed some act toward the commission of the crime; and (3) appellant failed to consummate its commission." *Bell v. State*, 105 Nev. 352, 954, 775 P.2d 1273, 1274 (1989).
>
> DeCastro notes that the information charged DeCastro with attempted sexual assault with a minor under the age of fourteen because DeCastro attempted to sexually assault the victim by attempting to have her perform sexual acts. DeCastro points out that the victim testified that after DeCastro asked her to perform sexual acts and she declined, DeCastro said he was just joking and put his penis back in his pants. DeCastro argues that no other action was taken towards "sexual penetration," in which there was no show of force or intimidation, and he suggests that there was no intent to complete the sexual assault. DeCastro contends that if his conviction for attempted sexual assault stands, any stereotypical flasher could be charged with attempted sexual assault for any repeated instance of flashing his private parts to a single individual.
>
> However, the circumstances of the case and the prior sexual abuse of the victim support the notion that DeCastro had a clear design to convince the victim to perform fellatio upon him. The prior sexual interactions, combined with the attempted fellatio, allowed a reasonable jury to conclude beyond a reasonable doubt that DeCastro had the intent to commit a sexual assault upon the victim sufficient to sustain a guilty verdict. We conclude that the evidence was sufficient for a jury to determine beyond a reasonable doubt that DeCastro attempted to have the victim perform fellatio on him.

Exh. 100, pp. 10-12.

DeCastro asserts that the Nevada Supreme Court made an unreasonable determination of fact because the victim did not establish a chronological timeframe for the various incidents (ECF No. 44, p. 16). He argues that the State did not establish that there were "prior sexual interactions" to this specific event, as presumed by the state supreme court. DeCastro is correct that a specific order of occurrence for all of

11

the incidents was not necessarily established at trial. However, the State specifically asked the victim to describe the *first* time that DeCastro abused her. She testified that the first time, she was walking from DeCastro's kitchen to the living room when he pushed her down on the carpet, "French" kissed her mouth, neck and breasts, and reached under her shirt to fondle her breasts while she tried to push him off her. Exh. 49, pp. 25-26. Thus, the victim's testimony reflects that the incident when DeCastro pulled out his penis and asked her to touch it or lick it was not the first incident of abuse, and the testimony undermines DeCastro's argument that at most his actions amounted to indecent exposure. Considering the entirety of the victim's testimony, it cannot be said that no rational trier of fact could have found proof of guilt beyond a reasonable doubt of attempted sexual assault.

The court concludes that DeCastro has not shown that the Nevada Supreme Court's decision on federal ground 2 is contrary to, or involves an unreasonable application of, clearly established federal law, as determined by the U.S. Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). Accordingly, ground 2 is denied.

**IV.      Certificate of Appealability**

This is a final order adverse to the petitioner. As such, Rule 11 of the Rules Governing Section 2254 Cases requires this court to issue or deny a certificate of appealability (COA). Accordingly, the court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463

U.S. 880, 893 & n.4 (1983)).  For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct.  *Id.*

Having reviewed its determinations and rulings in adjudicating DeCastro's petition, the court finds that none of those rulings meets the *Slack* standard.  The court therefore declines to issue a certificate of appealability for its resolution of either of DeCastro's claims.

## V. Conclusion

**IT IS THEREFORE ORDERED** that the amended petition (ECF No. 31) is **DENIED** in its entirety.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk shall enter judgment accordingly and close this case.

DATED: 15 January 2019.

_____
ROBERT C. JONES
UNITED STATES DISTRICT JUDGE